United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ARNAUD CAMMAS,<br>Plaintiff,<br>v.<br>CITY OF BERKELEY, et al.,<br>Defendants. | Case No. 25-cv-10296-LB<br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: ECF No. 47 |

**INTRODUCTION**

The plaintiff, who is representing himself and proceeding in forma pauperis, sued the City of Berkeley and city officials over a February 4, 2022, incident at the Downtown Berkeley YMCA, where he lived. The YMCA's executive director, Lance Goree, allegedly threatened to kill him and choked him into unconsciousness, and the responding Berkeley police officers allegedly credited Goree's account, arrested the plaintiff, and misrepresented his medical condition to paramedics and jail staff. The court dismissed the original complaint with leave to amend to cure specific deficiencies: the plaintiff did not plausibly plead a *Monell* claim, conceded the City's arguments about his Rehabilitation Act and ADA claims, and otherwise pleaded only claims that

were barred by the statute of limitations.[1] The amended complaint attempted to cure the deficiencies by pleading a decade-long "shadow enforcement" program among the Berkeley police department, the Downtown Berkeley Association, and the YMCA to delegate police powers to civilians. It also pleaded new theories to avoid the statute of limitations: disability tolling, federal equitable tolling and equitable estoppel, statutory tolling under Cal. Gov't Code § 945.3, delayed accrual of the *Monell* claim, the continuing-violation doctrine, and the two-year filing period of Cal. Gov't Code § 945.6(a)(2) for the new state-law claims. Finally, without seeking leave to amend, it added new claims and new defendants (including responding police officers).[2]

The defendants sued in the initial complaint moved to dismiss the amended complaint with prejudice and to strike the new claims and parties because they exceeded the scope of the court's leave to amend.[3] The court grants the motion.

First, for the existing claims and defendants, the additional tolling allegations fail: a plaintiff who sued the YMCA over this same incident in October 2022, retained counsel in 2023, and pursued records and accountability continuously thereafter did not lack the legal capacity to sue, and no extraordinary circumstance or concealment prevented him from timely filing claims whose factual basis he alleges he knew on the day of the incident. Section 945.3 does not apply because no criminal charges were ever filed against the plaintiff. The *Monell*, § 1985, and § 1986 claims are untimely under either approach to accrual and in any event remain implausibly pleaded. The state-law claims are untimely under § 945.6(a)(2), and disability tolling is statutorily unavailable for them. The court dismisses the claims with prejudice because amendment would be futile.

Second, for the new claims and defendants, the plaintiff did not seek leave to amend, and the new claims and new defendants exceed the scope of the permitted amendment. Leave to amend would be futile for all new claims and defendants — because the statute of limitations similarly bars

---

[1] Compl. – ECF No. 1 at 3; Suppl. Compl. – ECF No. 12; Order – ECF No. 43. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] First Am. Compl. (FAC) – ECF No. 45.

[3] Mot. – ECF No. 47 at 12, 15 n.3; Reply – ECF No. 53 at 7–8.

the claims and the court lacks supplemental jurisdiction over the state claims — except for a First Amendment claim (claim nine) predicated in part on the Berkeley PD's alleged June 25, 2024, refusal to accept the plaintiff's police report. But the allegations in the complaint are too conclusory to determine whether amendment is futile. If the plaintiff wants to pursue this theory, he must ask for leave to do so by September 21, 2026, and must attach a supplement to the existing complaint adding non-conclusory allegations that support the First Amendment claim.

## STATEMENT

### 1. The Complaint's Allegations

The plaintiff lived at the downtown Berkeley YMCA. On February 4, 2022, Lance Goree (the YMCA's executive director) "stalked and threatened" the plaintiff for about twenty-five minutes before placing him in a chokehold lasting about fifteen minutes that caused the plaintiff to lose consciousness.[4] Goree later destroyed video evidence of the twenty-five minutes before the chokehold.[5] Berkeley police officers arrived at the scene during the chokehold, saw the plaintiff being physically restrained by Goree and two other civilians, deactivated their body-worn cameras, and treated the plaintiff as the aggressor.[6] Other choking incidents occurred at the same YMCA in 2014, 2015, and 2020.[7]

Sergeant Landrum initially called an ambulance for the plaintiff but cancelled it and told him that "the DA would charge him if he went to the hospital and would make this a lot worse." Officer Peters told the responding EMTs that the plaintiff was "perfectly fine" and did not need medical treatment. The plaintiff was then taken to Santa Rita Jail, where Peters falsely told medical staff that the plaintiff had not been choked, was fully conscious during the incident, and had punched the landlord.[8]

---

[4] FAC – ECF No. 45 at 2 (¶ 1), 27 (¶ 44).

[5] *Id.* at 26 (¶ 41).

[6] *Id.* at 27 (¶¶ 45–46).

[7] *Id.* at 3 (¶ 2).

[8] *Id.* at 28 (¶¶ 47, 49–50).

United States District Court
Northern District of California

United States District Court
Northern District of California

Following the February 2022 incident, the plaintiff satisfied the six-month claim-presentation requirement under Cal. Gov't Code §§ 910, 911.2 for claims of assault, false arrest, denial of medical care, and fabrication of the police report.[9] He filed a state-court case against the YMCA in 2022 about the same incident.[10] Between 2022 and December 2024, he engaged in discovery, seeking records of police reports, body-worn camera footage, internal-affairs investigations, and the relationship between the Berkeley police department and the YMCA.[11] In 2023, he filed Public Records Act requests and complaints with the Office of the Director of Police Accountability.[12]

In his amended complaint, the plaintiff alleges facts relevant to his tolling arguments. The chokehold caused disabling injuries, starting in 2022 through 2024. He was granted modified work activity at his job and placed off work because of his disabilities (including PTSD and respiratory distress stemming from the February 2022 incident) between April 5 and 18, 2022, February 22 and May 23, 2023, September 1 and October 6, 2023, October 6 and November 6, 2023, March 29 and July 5, 2024, and July 8 and August 9, 2024.[13] On July 17, 2024, the plaintiff was involuntarily admitted to UCSF Langley Porter Psychiatric Hospital for posing a danger to himself and was released on July 25, 2024. The plaintiff presented with "command auditory hallucinations to harm himself, including command hallucinations to 'crush [his] pills and eat them' and to 'kill [him]self, jump off a bridge.'" The plaintiff has diagnoses for unspecified psychosis, unspecified mood disorder, PTSD, and Major Depressive Disorder.[14] The plaintiff reports taking about twenty medications, including two antipsychotic medications and others for treating depression, anxiety, sleep, cognition, nerve pain, and migraines.[15]

---

[9] *Id.* at 6 (¶ 8B).

[10] *Id.* at 36 (¶ 70).

[11] *Id.* at 10 (¶ 11), 93 (¶ 174).

[12] *Id.* at 55 (¶ 118), 93 (¶ 175).

[13] *Id.* at 38–40 (¶ 76), 60 (¶ 124); *see* Letters, Exs. to Request for Judicial Notice – ECF Nos. 56-14–16.

[14] FAC – ECF No. 45 at 41 (¶ 77).

[15] *Id.* at 42 (¶ 78).

United States District Court
Northern District of California

The plaintiff also adds allegations relevant to the program implemented in downtown Berkeley. He alleges that the harm he suffered in February 2022 and the subsequent retaliation and coverup of the incident were part of a "shadow enforcement system." By 2012, the City of Berkeley had "created, funded, and maintained a civilian enforcement apparatus through which untrained, unsworn individuals affiliated with the Downtown Berkeley Association and the YMCA of the East Bay were delegated police-type powers in downtown Berkeley."[16] Downtown Berkeley Association "ambassadors" were "equipped with BPD radios, trained by BPD officers, and directed to conduct patrols, surveillance operations, detentions, and citizen's arrests of individuals in the downtown Berkeley area." By 2020, Downtown Berkeley Association ambassadors were armed with batons, pepper spray, and handcuffs and trained to "de-escalate violent activity, assist police with arrests and act as a buffer for smaller crimes."[17]

Finally, the plaintiff adds allegations about post-incident acts: "SUSPECT OFFENDER" reports against the plaintiff from May to October 2022; a July 2022 eviction recommendation; joint YMCA–BPD intimidation visits to his residence through July 2023; an arrest referral; Berkeley PD's June 25, 2024, refusal to accept a police report from him; records denials through 2024 and 2025; and alleged harassment of foreign-born tenants through August 2024.[18] The District Attorney held the arrest referral under review for ten months before declining to file charges on December 6, 2022.[19] On November 28, 2023, Police Chief Jennifer Louis sent the plaintiff the findings of the internal investigation of the February 2022 incident, finding that the allegations of discourtesy and improper investigation were unfounded.[20]

---

[16] *Id.* at 17 (¶ 19).

[17] *Id.* at 18 (¶ 21).

[18] *Id.* at 25 (Table), 31–33 (¶¶ 61–64), 99 (¶ 177).

[19] *Id.* at 4 (¶ 4).

[20] *Id.* at 34 (¶ 65).

**2. Relevant Procedural History**

The plaintiff filed the initial complaint on November 29, 2025.[21] The court issued a screening order identifying deficiencies, including the statute of limitations and other deficiencies, and allowed the plaintiff to add allegations to correct the deficiencies.[22] The plaintiff amended the complaint, naming the City of Berkeley, Paul Buddenhagen (the current city manager), Andrew Greenwood (the City's former police chief), and Jennifer Louis (the current police chief), and claiming (1) violations of 42 U.S.C. § 1983 for excessive force, unreasonable seizure, state-created danger, substantive and procedural due process, violation of the Equal Protection Clause, and *Monell* liability (claims one through seven); (2) disability discrimination and retaliation under Title II of the Americans with Disabilities Act (ADA), *id.* § 12132, the Fair Housing Act, *id.* §§ 3604(f), 3617, and the Rehabilitation Act § 504, 29 U.S.C. § 794 (claims eight through eleven); and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3) (claim twelve). The court dismissed all claims on the grounds that the plaintiff had not pleaded a *Monell* claim, had conceded the City's arguments about the Rehabilitation Act and ADA claims by not responding to them, and otherwise pleaded only claims barred by the statute of limitations. It gave leave to amend to cure the identified deficiencies.[23]

The plaintiff filed an amended complaint on April 20, 2026, that added new defendants and new claims and also addressed the identified deficiencies. The claims are (1) excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment (against Goree (as an alleged state actor) and police officers Kevin Peters, Francis Landrum, and Kajahna Futch, all new defendants), (2) unlawful seizure in violation of § 1983 and the Fourth Amendment (against Futch, Peters, and Landrum), (3) malicious prosecution in violation of § 1983 and the Fourth Amendment (against Futch, Peters, and Landrum), (4) failure to intervene in violation of § 1983 and the Fourteenth Amendment (against Futch, Peters, and Landrum), (5) fabrication of evidence in violation of §

[21] Compl. – ECF No. 1.

[22] Order – ECF No. 8.

[23] Order – ECF No. 43 at 1–2 (summarizing claims and defendants), 13 (scope of leave to amend). All parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 20, 28.

United States District Court
Northern District of California

1983 and the Fourteenth Amendment (against Futch, Peters, and Landrum), (6) a violation of substantive due process in the form of a state-created danger in violation of § 1983 and the Fourteenth Amendment (against Greenwood, Buddenhagen, and Berkeley Mayor Jesse Arreguin), (7) deliberate indifference to his serious medical needs in violation of § 1983 and the Fourteenth Amendment (against Peters and Landrum), (8) racial discrimination in violation of § 1983 and the equal-protection clause of Fourteenth Amendment (against Futch, Peters, Landrum, Louis, Buddenhagen, and the City), (9) First Amendment retaliation by the 2022 eviction, post-eviction intimidation visits, records obstruction, a refusal to investigate Goree, and a refusal to comply with a lawful subpoena for fourteen months (against Landrum, Futch, Peters, Louis, and Buddenhagen), (10) *Monell* municipal liability (against the City of Berkeley), (11) ADA Title II disability discrimination (against the City), (12) Fair Housing Act discrimination, 18 U.S.C. § 3604(f), based on disability (against the City) and race and national original (against the City policymaker defendants), (13) Fair Housing Act interference and retaliation (against the City and the individual defendants), (14) disability discrimination in violation of the Rehabilitation Act (against the City), (14A) race and national-origin discrimination in violation of Title VI of the Civil Rights Act of 1964 (against the City), (14B) intentional discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981 (against the City and the individual defendants), (15) conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) (against all defendants), (16) a violation of California's Bane Act, Cal Civ. Code § 52.1 (against Futch, Peters, and Landrum), (17) false imprisonment in violation of California law (against Futch, Peters, and Landrum), (18) intentional infliction of emotional distress (against all defendants), (19) negligence (against Peters, Landrum, Futch, and the City (vicariously)), (20) neglectful failure to prevent conspiracy in violation of 42 U.S.C. § 1986 (against Greenwood, Louis, Arreguin, Buddenhagen, and the City), (21) fraud by concealment and failure to disclose (against the City, Greenwood,

Louis, Arreguin, and Buddenhagen), and (22) a violation of the Ralph Civil Rights Act, Cal. Civ. Code § 51.6 (against Landrum, Peters, Futch, and the City).[24]

The defendants named in the original complaint moved to dismiss the claims in the amended complaint as barred by the statute of limitations, implausibly pleaded, and exceeding the scope of amendment authorized in the earlier dismissal order.[25]

**LEGAL STANDARD**

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see* 28 U.S.C. § 1915(e)(2)(B) (before authorizing the service of a complaint of a person proceeding in forma pauperis under 28 U.S.C. § 1915(a), the court must determine whether the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief).

"A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). Fact allegations are accepted as true and construed in the light most favorable to the plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which

[24] FAC – ECF No. 45 at 42–82 (¶¶ 79–163) (also naming Doe defendants). The parties do not dispute the court's federal-question jurisdiction. 28 U.S.C. § 1331. The plaintiff does not oppose dismissal of the official-capacity claims against the individual defendants as duplicative of his claims against the City. Opp'n – ECF No. 50 at 29; *Kentucky v. Graham*, 473 U.S. 159, 165–67 & n.14 (1985). Those claims are dismissed.

[25] Mot. – ECF No. 47. The court can decide the motion without oral argument. Civil L.R. 7-1(b).

United States District Court
Northern District of California

they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009).

## ANALYSIS

The issues are (1) whether the plaintiff exceeded the scope of amendment granted by the court, (2) whether the plaintiff's claims are barred by the statute of limitations and, (3) if not, whether he has plausibly pleaded his claims.

### 1. Scope of Amendment

The March 2026 dismissal order granted leave to "file an amended complaint addressing the determinations in [the court's] order." The order concluded that the non-*Monell* claims were time-barred, the plaintiff had conceded his Rehabilitation and ADA claims, and his *Monell* claim was not plausibly pleaded.[26] The amended complaint addressed the identified issues but also added new defendants and new claims (all summarized in the Statement, supra).

As the City asserts, the dismissal order limited amendment to curing the complaint's deficiencies. *Lombard Flats LLC v. Fay Servicing LLC*, No. 22-cv-05686-LB, 2023 WL 4188223, at *4 (N.D. Cal. June 24, 2023) (where the court "identifies the scope of leave to amend," amended pleadings should not exceed that scope (cleaned up)). The plaintiff did not seek leave to add new claims or new defendants. As a technical matter, for that reason, the new defendants are not part of the case, and their consent is not required for the court to address the motion to dismiss. *See Williams v. King*, 875 F.3d 500, 503–05 (9th Cir. 2017); *Ramirez v. Figueroa*, No. CV 15-6338 SS, 2016 WL 1296363, at *1 n.2 (C.D. Cal. Apr. 1, 2016) ("[T]he lack of consent of someone who is not a party to an action does not deprive the magistrate judge of jurisdiction." (quoting *Williams v.*

[26] Order – ECF No. 43.

United States District Court
Northern District of California

*Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998))). That said, practically, the court would have addressed whether amendment was appropriate had the plaintiff followed the correct process. It thus addresses futility of amendment below given that (as discussed below) the statute of limitations bars all claims but one. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (a court may deny leave to amend for futility) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Ahlmeyer*, 555 F.3d at 1055 (same).

**2. Statute of Limitations**

The limitations periods are not disputed.[27] Claims under §§ 1983 and 1985 borrow California's two-year period for personal-injury actions. Cal. Civ. Proc. Code § 335.1; *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). A § 1986 claim has a one-year period. 42 U.S.C. § 1986. Fair Housing Act claims must be brought within two years of "the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A); *Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008). Title VI claims, and § 1981 claims against state actors — which proceed through § 1983, *see Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007) — are subject to the same two-year period. *Cross v. City and County of San Francisco*, 386 F. Supp. 3d 1132, 1142 (N.D. Cal. 2019). The ADA and Rehabilitation Act claims have three-year periods. *Sharkey v. O'Neal*, 778 F.3d 767, 771–74 (9th Cir. 2015); *Peters v. Bd. of Trs. of Vista Unified Sch. Dist.*, 457 F. App'x 612, 614 (9th Cir. 2011). The state-law claims are governed by the Government Claims Act: assuming, as the plaintiff pleads, that the City never served a written rejection of his timely tort claim, he had two years from accrual to sue. Cal. Gov't Code § 945.6(a)(2); *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 705–09 (1989).

Federal law fixes accrual of the federal claims: a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action, and the later discovery of additional

[27] Mot. – ECF No. 47 at 16–17; Opp'n – ECF No. 50 at 4, 16–17 (agreeing on the periods; disputing accrual and tolling).

evidence supporting a legal theory does not delay accrual. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019); *Lukovsky*, 535 F.3d at 1048–51. The court held before — and the FAC confirms — that the incident-based claims accrued on February 4, 2022: the plaintiff alleges that he knew that day that he had been choked, that the officers credited Goree, arrested him, and misstated his condition, and that the police report was false from the outset.[28] He filed this case on November 28, 2025, three years and almost ten months later.[29]

Two accrual refinements do not change the outcome. Claims that require favorable termination of criminal proceedings — deliberate fabrication of evidence and malicious prosecution — accrue when the proceedings resolve in the plaintiff's favor. *McDonough*, 139 S. Ct. at 2156–58; *Thompson v. Clark*, 596 U.S. 36, 49 (2022); *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Assuming without deciding that the doctrine applies where no accusatory pleading was ever filed, the latest possible accrual dates are December 6, 2022, when the District Attorney declined to prosecute, or August 2023, when the earlier pleading alleged the plaintiff learned of that outcome. So those claims expired, without tolling, by December 2024 or August 2025.[30] And a false-arrest or false-imprisonment claim accrues no later than when the allegedly unlawful detention ends or legal process begins, *Wallace v. Kato*, 549 U.S. 384, 389–92 (2007) — here, in 2022 on any view. Every claim therefore expired, without tolling, between February 2024 and August 2025. The question then is tolling.

**2.1 Disability Tolling Under Section 352(a)**

California tolling rules apply to the borrowed federal limitations periods. *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Section 352(a) tolls a limitations period for a plaintiff who, "at the time the cause of action accrued," is "lacking the legal capacity to make decisions." Cal. Civ. Proc. Code § 352(a). The disability must exist when the claim accrues, *id.* § 357, and the standard is the incapacity to manage one's affairs or to

[28] Order – ECF No. 43 at 7–8; FAC – ECF No. 45 at 2–3 (¶¶ 1, 3), 13–16 (¶¶ 15–17); Opp'n – ECF No. 50 at 30 ("[T]he disabling injuries were manifest on scene.").

[29] Compl. – ECF No. 1.

[30] FAC – ECF No. 45 at 4 (¶ 4), 7–8 (¶ 8E), 99 (¶ 178); Suppl. Compl. – ECF No. 12 at 2 (¶ 3).

comprehend one's legal rights or liabilities (not the lack of evidence, sophistication, or counsel). *Alcott Rehab. Hosp. v. Super. Ct.*, 93 Cal. App. 4th 94, 101 (2001); *Hsu v. Mt. Zion Hosp.*, 259 Cal. App. 2d 562, 571 (1968). Once capacity exists, the statute runs; a later period of disability does not stop it. *See* Cal. Civ. Proc. Code § 357.

The court accepts the FAC's medical allegations as true.[31] But the FAC's other allegations defeat the plaintiff's tolling arguments. On his own pleading, by October 19, 2022 (eight and a half months after the incident), he filed and then prosecuted a state-court lawsuit against the YMCA arising from the same assault; in 2023 he retained counsel to demand a criminal investigation of Goree; and beginning in 2023 he propounded public-records requests and subpoenas and complained to the Office of the Director of Police Accountability.[32] A litigant able to understand his legal rights well enough to sue over the incident, engage counsel about it, and run a sustained records campaign concerning it did not "lack[] the legal capacity to make decisions" within the meaning of § 352(a).

The plaintiff's answer — that capacity is "action-specific," so the ability to file a "simple" state case against a known defendant does not show the ability to plead a complex federal *Monell* case — confuses capacity with information.[33] The authorities he cites ask whether the claimant could understand the need to file on time and could prepare and effect a filing. *Bills v. Clark*, 628 F.3d 1092, 1097, 1099–1100 (9th Cir. 2010) (federal equitable tolling in habeas, requiring a causal link between the impairment and the untimeliness); *Hsu*, 259 Cal. App. 2d at 571. They do not measure capacity claim-by-claim against the complexity of the eventual pleading. What the plaintiff says he lacked until the 2024–2026 productions was *proof* of the institutional program, which is an argument about accrual and concealment, not about his capacity to make decisions.

The arithmetic confirms the result even on the most generous view of the allegations. Crediting incapacity from the assault until the October 19, 2022, filing — roughly eight and a half

[31] FAC – ECF No. 45 at 87–91 (¶¶ 168–71); Opp'n – ECF No. 50 at 4–6.

[32] FAC – ECF No. 45 at 93–94 (¶¶ 175, 175B); Opp'n – ECF No. 50 at 6–9.

[33] Opp'n – ECF No. 50 at 8–9.

United States District Court
Northern District of California

months, the most the FAC could support — the two-year claims expired in October 2024, more than a year before the plaintiff filed, and adding the alleged July–November 2024 episode (the § 5150 hold and the Sunset letters) would move the deadline only to early 2025. The three-year ADA and Rehabilitation Act claims fare no better. Because § 352(a) fails at the threshold, those claims expired on February 4, 2025. The 2024 episode neither restarts the clock, Cal. Civ. Proc. Code § 357, nor supplies equitable tolling: tolling requires diligence and a causal link between the extraordinary circumstance and the untimely filing, *Smith v. Davis*, 953 F.3d 582, 588–89, 598–601 (9th Cir. 2020) (en banc), and on the FAC's allegations the plaintiff had resumed his records campaign by December 1, 2024 — more than two months before that deadline — and then waited nearly a year to file.[34]

**2.2 Equitable Tolling and Equitable Estoppel**

California's equitable-tolling doctrine, which governs the borrowed periods, requires timely notice to the defendant through the plaintiff's good-faith pursuit of an alternative remedy, and a lack of prejudice. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008). Nothing here qualifies. The October 2022 lawsuit named the YMCA, not these defendants, and gave the City no notice of these claims, and internal-affairs complaints and public-records requests are not alternative legal remedies for the claims in this case. The result is the same under the federal framework the parties brief: reasonable diligence plus an extraordinary circumstance that made timely filing impossible. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). As the court held before, and as the FAC now confirms in detail, the plaintiff was able to pursue litigation from October 2022 forward, and nothing beyond his control made a timely filing impossible.[35]

Equitable estoppel — fraudulent concealment — asks a different question: whether the defendants' own affirmative conduct, above and beyond the wrongdoing on which the claims rest, prevented the plaintiff from suing in time. *Lukovsky*, 535 F.3d at 1051–52; *Estate of Amaro v. City*

---

[34] Suppl. Compl. – ECF No. 12 at 3 (¶ 7); FAC – ECF No. 45 at 88–91 (¶¶ 169–70).

[35] Order – ECF No. 43 at 9–10.

*of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011). In *Amaro*, the city's misrepresentations concealed the facts constituting the claim itself: the plaintiff did not know her daughter had been beaten. Here, the plaintiff alleges that he knew the essential facts — the assault, the arrest, and the falsity of the report — on February 4, 2022, and that he believed from the outset that the officers had inverted victim and aggressor. The nine acts of "concealment" he catalogs are the alleged wrongdoing itself (the false report), discovery and records disputes (staggered productions, redactions, denials of records requests, and a slow subpoena response by the non-party Fire Department), or conduct of the YMCA, which is not a defendant here.[36] Withholding corroborating evidence from a plaintiff who already knows of his injury and its cause — and who is actively litigating and investigating — does not estop a limitations defense. *Lukovsky*, 535 F.3d at 1052. Sergeant Wilson's 2023 reversal of a probable-cause finding against Goree is a charging decision about a third party, not a misrepresentation that kept the plaintiff from suing the City.[37]

**2.3 Cal. Gov't Code § 945.3**

Section 945.3 bars — and tolls the limitations period for — a civil action against a peace officer or the employing entity by a person "charged by indictment, information, complaint, or other accusatory pleading" while "the charges against the accused are pending before a superior court." Cal. Gov't Code § 945.3; *see Harding v. Galceran*, 889 F.2d 906, 908 (9th Cir. 1989) (the tolling provision applies to § 1983 claims). By its terms, the statute requires a filed accusatory pleading. The FAC alleges the opposite: no criminal complaint was ever filed, and the District Attorney declined to prosecute on December 6, 2022.[38] A prosecutor's charging review is not a charge pending before a superior court. The plaintiff's fallback — tolling "by analogy" through Code of Civil Procedure § 356 — fails for the same reason: no statutory prohibition prevented him from suing during the review. Indeed, he sued the YMCA during that very window. Section 945.3 supplies no tolling.

---

[36] Opp'n – ECF No. 50 at 9–10; FAC – ECF No. 45 at 93 (¶ 174).

[37] FAC – ECF No. 45 at 94–95 (¶ 175A(c)).

[38] *Id.* at 4 (¶ 4), 7 (¶ 8E).

United States District Court
Northern District of California

**2.4 The Continuing-Violation Doctrine**

The court rejected this theory before, and the FAC's reframing does not change the analysis.[39] After *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges," *id.* at 113, and the Ninth Circuit has consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746–48 (9th Cir. 2019). The plaintiff's claims seek redress for what happened to him on February 4, 2022, and in its aftermath, which are quintessentially individualized claims. *Knox v. Davis*, does not help him: it held that the continuing effects of a discrete decision do not restart the clock. 260 F.3d 1009, 1013 (9th Cir. 2001).

The acts alleged within the limitations period do not revive the 2022 claims; at most, each could support its own timely claim. *Morgan*, 536 U.S. at 113. They do not. Chief Louis's November 28, 2023, "Unfounded" closure of the internal-affairs investigation is not itself a constitutional violation against the plaintiff. There is no constitutional entitlement to an internal-affairs outcome or to the discipline of others. *Cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). The 2024–2025 records denials are records and discovery disputes, not constitutional violations, as the court held before. The alleged harassment of foreign-born tenants through August 2024 concerns third parties and remains conclusory as to the plaintiff, and no in-period act is a discriminatory housing practice, so the Fair Housing Act claims are untimely too.[40] The June 25, 2024, refusal to accept the plaintiff's police report is within the period. It is addressed in section 3 below.

**2.5 The Monell, § 1985, and § 1986 Claims**

The court previously declined to hold the *Monell* claim time-barred because lower courts divide on accrual: some use the date of the underlying conduct, and others delay accrual until the plaintiff "is at least on inquiry notice that the conduct the plaintiff experienced is part of some pattern or practice sufficient to give rise to *Monell* liability." *Bell v. Lee*, No. 13-cv-05820-SI,

[39] Order – ECF No. 43 at 10–12.

[40] *Id.* at 11; Suppl. Compl. – ECF No. 12 at 6 (¶¶ 34–37).

2023 WL 5836812, at 2 (N.D. Cal. Sep. 8, 2023) (cleaned up). The court need not choose between the approaches, because the FAC is untimely under either. *Cf. Marlowe v. City & County of San Francisco*, 753 F. App'x 479, 479 (9th Cir. 2019).

Under the occurrence approach, the claim accrued in February 2022. Under the delayed-accrual approach, the FAC itself establishes inquiry notice more than two years before the November 28, 2025, filing. The plaintiff alleges that he experienced the joint YMCA–Berkeley PD program firsthand: YMCA staff exercised enforcement authority over him, the responding officers deferred to Goree, and through July 2023 YMCA staff and officers jointly returned to his residence to intimidate him under the guise of wellness checks.[41] He alleges that he believed from the day of the incident that the report was false and that the officers were protecting Goree, and that from 2022 into 2023, he pursued internal-affairs complaints, retained counsel, and propounded records requests to uncover the coordination he suspected.[42] Inquiry notice requires suspicion, not proof, and a plaintiff who was investigating a suspected pattern was necessarily on inquiry notice of it. *See Lukovsky*, 535 F.3d at 1048–51. The 2024–2026 productions gave the plaintiff evidence (the improvement-district budget, the training and email records, the prior incidents, the fire-department data), but the later discovery of evidence supporting a legal theory does not delay accrual. *Id.* at 1050–51. The *Monell* claim, and the § 1985(3) conspiracy claim that rests on the same program, accrued by mid-2023 at the latest and expired before this case was filed. The § 1986 claim fails *a fortiori*: it carries a one-year limitations period, 42 U.S.C. § 1986, and is derivative of the § 1985 claim in any event.

Dismissal would be required even if these claims were timely. The ratification theory — the only act within the period — fails because a policymaker must approve both the subordinate's decision and the basis for it; "[a] mere failure to overrule a subordinate's actions, without more, is insufficient." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *City of St. Louis v. Praprotnik*, 485

---

[41] FAC – ECF No. 45 at 2–3 (¶¶ 1–3), 13–16 (¶¶ 15–17), 31–33 (¶¶ 61–64), 99 (¶ 177); Suppl. Compl. – ECF No. 12 at 4 (¶ 18), 6 (¶ 30).

[42] FAC – ECF No. 45 at 6–8 (¶¶ 8A–8F), 93 (¶ 175); Opp'n – ECF No. 50 at 6–7; Reply – ECF No. 53 at 9 & n.2.

United States District Court
Northern District of California

U.S. 112, 127 (1988) (plurality). A single "Unfounded" closure — even one alleged to be contrary to body-camera footage — shows disagreement with the plaintiff's account of a past incident, not a deliberate municipal choice that caused it. And the program allegations, though far more detailed than before, describe the alleged empowerment of civilian YMCA and DBA personnel but still do not identify a municipal policy, custom, or training deficiency (or a pattern of similar violations) that plausibly was the moving force behind the responding officers' own conduct (the arrest, the report, and the alleged interference with medical care) that forms the constitutional core of the claim. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011); *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

**2.6 The State-Law Claims**

The new state-law claims — under the Bane Act and the Ralph Act, and for false imprisonment, intentional infliction of emotional distress, negligence, and fraud — are untimely on the plaintiff's own theory. Accepting his allegations that he timely presented a claim, that it was rejected by operation of law, and that the City never served a written rejection, the governing deadline was two years "from the accrual of the cause of action." Cal. Gov't Code § 945.6(a)(2).[43] The causes of action accrued in February 2022 — or, at the latest, in December 2022 — so the period expired by December 2024, nearly a year before he filed. No tolling bridges the gap. Disability tolling is statutorily unavailable in "an action against a public entity or public employee upon a cause of action for which a claim is required to be presented." Cal. Civ. Proc. Code § 352(b). Section 945.3 does not apply because no charges were filed, and equitable tolling and estoppel fail for the reasons above. To the extent the fraud claim rests on conduct the plaintiff says he discovered in 2024, a cause of action accruing then required its own timely claim presentation, which the FAC does not allege. *See* Cal. Gov't Code §§ 901, 911.2; *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). Because the state-law claims are untimely, the court does not reach the parties' disputes about Government Code sections 820.2 and 821.6 or the Bane Act's effect on those immunities.

[43] FAC – ECF No. 45 at 6–7 (¶¶ 8B–8D); Mot. – ECF No. 47 at 18; Opp'n – ECF No. 50 at 14–15.

In sum, the plaintiff's claim-by-claim timeliness table depends on stacking the tolling and accrual theories rejected above; with those removed, every entry fails, and every claim except the retaliation theory addressed next is time-barred.[44] Because relation back under Rule 15(c) would tie the claims against Officers Peters and Landrum only to the original November 28, 2025, filing — itself untimely — it cannot save them.

**3. The Remaining Timely Theory: First Amendment Retaliation**

One discrete act alleged in the FAC falls within two years of the filing and could in principle support its own claim: Berkeley PD's alleged June 25, 2024, refusal to accept a police report from the plaintiff, pleaded as First Amendment retaliation.[45] To state the claim, the plaintiff must plausibly allege that he engaged in constitutionally protected activity, that the defendants' action would chill a person of ordinary firmness from continuing that activity, and that his protected activity was a substantial or motivating factor in the defendants' conduct. *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). The FAC does not do so: it does not identify who refused the report, what protected activity motivated the refusal, or any facts beyond the sequence of events suggesting retaliatory intent. As pleaded, the allegation is a conclusion that does not plausibly plead a claim. *Iqbal*, 556 U.S. at 678.

**4. Leave to Amend**

The issue is whether the court should grant leave to amend. Leave to amend need not be granted where amendment would be futile. *Eminence Cap.*, 316 F.3d at 1051–52. Except for the retaliation theory, every claim in the FAC is barred by the statute of limitations, and the bar rests on the plaintiff's own detailed allegations about what he knew and did from February 2022 forward, all allegations he cannot plead around. He has amended once with the benefit of a reasoned order, and

[44] Opp'n – ECF No. 50 at 16–17 (claim-by-claim table).

[45] FAC – ECF No. 45 at 5–6 (¶ 8H), 55–56 (¶¶ 117–20); Mot. – ECF No. 47 at 16 n.4.

his best tolling facts, taken as true, fail as a matter of law. Further amendment of those claims would be futile, and they are dismissed with prejudice.

The only issue is the retaliation theory.

Because the retaliation theory appeared for the first time in the FAC and has not previously been tested, the plaintiff can move for leave to file an amended complaint, addressing only this issue and providing in support of his motion a supplement to the existing complaint that adds non-conclusory allegations that support the claim.

## CONCLUSION

The court grants the motion to dismiss. All claims other than the First Amendment retaliation claim predicated on conduct after November 28, 2023, are dismissed with prejudice and without leave to amend. For the retaliation claim, the plaintiff may file a motion for leave to amend by September 21, 2026, and must file a supplement to the complaint that identifies the actor or actors, the protected activity, and the facts supporting retaliatory motive. If he does not file a supplement by that date, the court will enter judgment and close the case.

This resolves ECF No. 47.

**IT IS SO ORDERED.**

Dated: September 3, 2026



LAUREL BEELER
United States Magistrate Judge