United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ARNAUD CAMMAS,

Plaintiff,

v.

CITY OF BERKELEY, et al.,

Defendants.

Case No. 25-cv-10296-LB

**ORDER DENYING MOTIONS FOR LEAVE TO FILE MOTIONS FOR RECONSIDERATION AND TO AMEND**

Re: ECF Nos. 64–65

**INTRODUCTION**

In September, the court granted the defendants' second motion to dismiss: it dismissed all claims with prejudice except a First Amendment retaliation claim predicated on conduct after November 28, 2023, and it told the plaintiff, who represents himself, that if he wanted to pursue that claim, he had to move by September 21, 2026, for leave to amend and attach a supplement identifying "the actor or actors, the protected activity, and the facts supporting retaliatory motive."[1] The plaintiff filed two motions that day. The first asks for leave to amend the retaliation claim (claim nine) and attaches the required supplement.[2] The second asks for leave to file a motion for reconsideration of one part of the September order — the dismissal with prejudice of

[1] Order – ECF No. 63 at 18–19. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Am. Mot. – ECF No. 64; Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 8–17.

claim five (fabrication of evidence), claim ten (*Monell*), and claim fifteen (§ 1985(3)) — or, in the alternative, for modification of that dismissal to one with leave to amend, and attaches a proposed second amended complaint. It challenges nothing else in the order.[3] The court ordered a response. The defendants oppose both motions and ask the court to enter judgment. The plaintiff replied four days after the deadline with an administrative motion to excuse the delay. The court grants that motion, has considered the reply, and finds a sur-reply unnecessary.[4]

The supplement identifies the actors (Sergeant Jennifer Wilson, Lieutenant David Lindenau, Sergeant Jumaane Jones, and Chief Jennifer Louis), the protected activity (the plaintiff's state-court lawsuit about the February 2022 incident and his complaints to the City's Office of the Director of Police Accountability (ODPA), continuing into 2024), and facts offered to show motive: (1) Sergeant Wilson's alleged statement that charges could be warranted but that she would not "bolster" the plaintiff's civil lawsuit, quoted in his June 25, 2024 email to the Department; (2) the routing of that email to the Internal Affairs Bureau; (3) Sergeant Jones's July 3, 2024 written response declining to act because charging is the District Attorney's decision; and (4) the District Attorney's July 15, 2024 letter stating that she reviewed only the 2022 report naming the plaintiff as the suspect and "did not review anything additional."[5] The defendants respond that amendment remains futile: (1) the only operative refusal was Sergeant Wilson's in February 2023, more than two years before this lawsuit; (2) the 2024 exchanges merely asked the Department to reconsider it; (3) no tolling or relation back saves the claim; (4) the allegations do not plausibly show retaliatory motive or a chilling adverse action; and (5) qualified immunity bars the claim in any event.[6]

The reconsideration motion's principal points are that the September order's accrual and

[3] Recons. Mot. – ECF No. 65; Proposed Second Am. Compl. (Proposed SAC), Ex. 1 to Recons. Mot. – ECF No. 65 at 16–116. The motion does not challenge the dismissal of claims two and three or the rulings on Cal. Civ. Proc. Code § 352(a), Cal. Gov't Code § 945.3, and federal equitable tolling and estoppel as previously presented. Recons. Mot. – ECF No. 65 at 4, 7, 13.

[4] Opp'n – ECF No. 68; Reply – ECF No. 70; Pl.'s Admin. Mot. – ECF No. 70-1.

[5] Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 10–15 (¶¶ 2–15); Cammas Decl. – ECF No. 65-2 (filed in support of both motions).

[6] Opp'n – ECF No. 68 at 13–22.

inquiry-notice findings attribute to the complaint allegations it does not contain, and the order resolved equitable tolling under California's three-element doctrine, which no party had briefed, without addressing *Cervantes v. City of San Diego*, 5 F.3d 1273 (9th Cir. 1993), which the plaintiff cited for the governing pleading-stage standard. The proposed second amended complaint pleads, with dates, when the City first produced the facts on which the municipal-custom theory rests, withdraws allegations the plaintiff now corrects, and re-pleads accrual, tolling, and estoppel.[7]

The court denies both motions. On reconsideration, the plaintiff is right that two of the September order's record citations attribute to his pleadings allegations they do not contain, and the court corrects those citations below. The result does not change because it does not depend on them: the proposed second amended complaint itself alleges that by August 2023 the plaintiff suspected the City–Goree relationship and was investigating it, which placed him on inquiry notice of the municipal-custom and conspiracy claims more than two years before he filed this case. And with California's equitable-tolling doctrine now fully briefed and the plaintiff's best allegations pleaded to its elements, no tolling theory bridges the gap for those claims or for the fabrication claim. The *Monell* and conspiracy claims also remain insufficiently pleaded. As for the retaliation claim, the supplement cures the pleading issues the September order identified but defeats the claim on timing: its allegations show that the decision the plaintiff challenges was Sergeant Wilson's in February 2023, the 2024 exchanges were his inquiries about that decision and the Department's reaffirmations of it, and the officers he now seeks to add were known to him (and named in his own oversight complaint) a year before he filed this lawsuit. Qualified immunity independently bars the damages claims against the officers. Amendment therefore would be futile. Because no claims remain, the court will enter judgment for the defendants and close the case.

**STATEMENT**

The court incorporates the Statement of its September order and summarizes only what matters

[7] Recons. Mot. – ECF No. 65 at 5–15; Proposed SAC – ECF No. 65 at 59–67 (¶¶ 61–61I), 107–15 (¶¶ 174–78).

here. The order held that (1) the incident-based claims accrued on February 4, 2022, (2) the First Amended Complaint's tolling theories failed on its own allegations, (3) the *Monell* and § 1985(3) claims were untimely under either approach to accrual because the plaintiff was on inquiry notice of the alleged pattern "by mid-2023 at the latest," and in any event did not plausibly plead a municipal policy, custom, or ratification, and (4) further amendment would be futile because the plaintiff's "best tolling facts, taken as true, fail as a matter of law."[8] One theory survived in principle: the June 25, 2024 refusal to accept the plaintiff's police report "is within the period" and "could in principle support its own claim." But the FAC did not identify "who refused the report, what protected activity motivated the refusal, or any facts beyond the sequence of events suggesting retaliatory intent."[9]

The supplement pleads this chronology. In early 2023, while the plaintiff's counsel pressed Sergeant Wilson to investigate Goree's use of force, Wilson allegedly told the plaintiff that the Department had already investigated, the District Attorney had already determined Goree's conduct was not criminal, and she would not "bolster" his civil lawsuit. Her February 7, 2023 written disposition found probable cause to arrest the plaintiff and did not address Goree's force.[10] On June 25, 2024, the plaintiff wrote to the Department (addressed to Lieutenant Lindenau and sent to Sergeant Wilson, Chief Louis, and the Department's public mailbox) recounting the "bolster" statement and asking what remedy existed for the refusal to send "the most basic information" to the District Attorney. The Department forwarded the email to the Internal Affairs Bureau, and on July 3, 2024, Sergeant Jones replied, describing "[t]he criminal investigation you mentioned Sergeant Wilson refused to file" and declining to act because "[t]he decision to file criminal charges is at the discretion of the District Attorney's office, not the Berkeley Police

[8] Order – ECF No. 63 at 11–17, 19.

[9] *Id.* at 15, 18.

[10] Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 11–13 (¶¶ 5–7) (Sergeant Wilson's knowledge of the lawsuit from counsel's January 25, 2023 email; the February 6, 2023 call; her February 7, 2023 written disposition, sent before counsel uploaded the video and audio; her March 10, 2023 email that the Homicide Division would not investigate).

Department."[11] On July 16, 2024, the plaintiff asked Wilson, Lindenau, and Louis to confirm that the Department was refusing to report the video and to provide the District Attorney with "evidence of my innocence such as the audio recording." No one responded, took a report, or forwarded evidence.[12] The District Attorney's office, which had told counsel in January 2023 that it does not conduct investigations and that evidence should be given to the Department, confirmed on July 15, 2024, that it had reviewed the report "wherein you were listed as a suspect" and "did not review anything additional in this case."[13] The plaintiff continued to complain into late 2024, including a November 11, 2024 certified personnel complaint to the ODPA naming Lindenau, Jones, and Louis about the same refusals, but received no response.[14]

The proposed second amended complaint pleads what the plaintiff knew and when for claims five, ten, and fifteen: (1) on February 4, 2022, he was semi-conscious and believed the officers were responding to what they had been told; (2) by May 10, 2022, he knew the report treated him as the aggressor and went to the station that day to submit evidence that he was the victim; (3) his August 3, 2022 ODPA complaint named Officer Peters and identified improper-arrest and false-report allegations; and (4) he obtained the police report and body-camera files in August 2023.[15] It pleads that the institutional facts on which the municipal-custom theory rests were first produced by the City between March and August 2024 (the 2015 Peace and Justice Commission materials, the June 2014 report to the City Manager and the Chief of Police that Goree grabbed a man by the neck and threatened to choke him, and the records of Department training of the enforcement personnel) after the City estimated in September 2023 that production would take "roughly one

---

[11] *Id.* at 13–14 (¶¶ 8–10).

[12] *Id.* at 14 (¶¶ 11–12).

[13] *Id.* at 14–15 (¶¶ 13–15).

[14] *Id.* at 10–11 (¶ 3A), 16–17 (¶ 18) (the January 8, 2024 objection to the Internal Affairs findings; the August and September 2024 follow-ups; the October 24, 2024 policy complaint; the November 11, 2024 certified personnel complaint naming Lieutenant Lindenau, Sergeant Jones, and Chief Louis, to which no response has been received).

[15] Proposed SAC – ECF No. 65 at 59–61 (¶¶ 61–61B), 66–67 (61I) (his condition and understanding on February 4, 2022; the May 10, 2022 station visit, logged as Incident No. 2022-00021702; the August 3, 2022 ODPA complaint naming Officer Peters; the August 8, 2023 release of the report and body-camera files under Public Records Act Request No. 23-272).

year," and after Goree denied in verified discovery responses in the state action any use of force, physical training, or complaints.[16] The motion also corrects the record: it withdraws the FAC's allegation that Sergeant Wilson found probable cause against Goree and then reversed (her February 7, 2023 email found probable cause to arrest the plaintiff; her March 10, 2023 email said the Homicide Division would not investigate), deletes FAC ¶ 175A, corrects the statement that the plaintiff (rather than his retained counsel) filed the October 19, 2022 state-court complaint, and corrects a sentence of his opposition brief.[17]

## LEGAL STANDARD

Before entry of judgment, a party must obtain leave of court to file a motion for reconsideration, Civil L.R. 7-9(a), here on the ground of "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order," Civil L.R. 7-9(b)(3), and without repeating any argument previously made, Civil L.R. 7-9(c). Reconsideration is appropriate only in "highly unusual circumstances." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Independently of the local rule, an order that adjudicates fewer than all claims "may be revised at any time before the entry of a judgment adjudicating all the claims," Fed. R. Civ. P. 54(b), and a district court has inherent power to reconsider and modify its interlocutory orders. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

Courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), weighing bad faith, undue delay, prejudice to the opposing party, futility, and prior amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). The parties agree that the only contested factor here is futility.[18] An

---

[16] *Id.* at 63–66 (¶¶ 61E–61H).

[17] Recons. Mot. – ECF No. 65 at 14–15 (¶¶ 8–10); Proposed SAC – ECF No. 65 at 61–62 (¶ 61C). The court can decide the motion without oral argument. Civil L.R. 7-1(b). All parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 20, 28.

[18] Opp'n – ECF No. 68 at 11; Reply – ECF No. 70 at 8.

amendment is futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (cleaned up). A court "should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," after notice of the deficiencies so that the opportunity to amend can be used effectively. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## ANALYSIS

### 1. Preliminary Matters

First, the court grants the plaintiff's administrative motion to file his reply four days after the deadline: the delay was short, explained, and harmless, and the court has considered the reply. Second, the court accepts the plaintiff's corrections of the record: FAC ¶ 175A is deemed withdrawn, and the corrected accounts of Sergeant Wilson's February and March 2023 emails, the October 19, 2022 filing by retained counsel, a sentence in the plaintiff's opposition brief, and the medical records identified in the motion are noted. The corrections are addressed where they matter below. None changes the result.[19]

### 2. The Motion for Reconsideration

#### 2.1 Correction of the September Order's Record Citations

The September order made two relevant findings. On accrual, it wrote that "the plaintiff alleges that he knew that day that he had been choked, that the officers credited Goree, arrested him, and misstated his condition, and that the police report was false from the outset," citing FAC ¶¶ 1, 3, and 15–17 and a sentence of the opposition.[20] On inquiry notice, it wrote that the plaintiff "alleges that he believed from the day of the incident that the report was false and that the officers

---

[19] Pl.'s Admin. Mot. – ECF No. 70-1; Recons. Mot. – ECF No. 65 at 14–15 (¶¶ 8–10, 9B) (also identifying the October 31, 2022 treating-psychiatrist letter at ECF No. 56-16).

[20] Order – ECF No. 63 at 11 & n.28 (citing FAC – ECF No. 45 at 2–3 (¶¶ 1, 3), 13–16 (¶¶ 15–17); Opp'n – ECF No. 50 at 30).

were protecting Goree," and that he "propounded records requests to uncover the coordination he suspected," citing FAC ¶¶ 8A–8F and 175, the opposition, and the defendants' reply brief.[21]

The plaintiff is right about the citations. The cited paragraphs do not allege his beliefs. ¶¶ 8A–8F address the Government Claims Act and the asserted impediments to earlier discovery. ¶ 8F alleges that he "could not, through reasonable diligence, have discovered the institutional basis" for the municipal claims until the City's 2024–2025 productions. ¶ 175 catalogs the steps he took. ¶ 16 alleges that he was semi-conscious. The quoted opposition sentence described what the responding officers could see, not what the plaintiff understood. The defendants' response (that the order "did not purport to quote the FAC" and drew an inference from conduct) concedes as much.[22] The court therefore grants the motion to this extent: it has reconsidered the challenged rulings, and it withdraws the quoted characterizations and the citations supporting them.[23] But correcting the citations does not change the outcome because the rulings do not depend on them. As set out below, the untimeliness of claims ten and fifteen follows from allegations the plaintiff himself pleads (most clearly in the proposed second amended complaint), and the analysis that follows rests on no finding about what the plaintiff believed on February 4, 2022.

**2.2 The *Monell* and Conspiracy Claims Remain Untimely**

Under the occurrence approach to *Monell* accrual, claims ten and fifteen accrued in February 2022 and expired before this November 2025 lawsuit. Under the delayed-accrual approach (the one most favorable to the plaintiff), the claims accrued when he was "at least on inquiry notice that the conduct [he] experienced is part of some pattern or practice."[24] Inquiry notice does not require knowledge of the custom in the form eventually pleaded and instead requires suspicion sufficient to

---

[21] *Id.* at 16 & n.42 (citing FAC – ECF No. 45 at 6–8 (¶¶ 8A–8F), 93 (¶ 175); Opp'n – ECF No. 50 at 6–7; Reply – ECF No. 53 at 9 & n.2).

[22] Recons. Mot. – ECF No. 65 at 5–7; Opp'n – ECF No. 68 at 23 ("The Court did not purport to quote the FAC. It drew an inference from Plaintiff's own extensive allegations . . . .").

[23] FAC – ECF No. 45 at 7–8 (¶ 8F), 13–14 (¶ 16); Opp'n – ECF No. 50 at 30 (the quoted sentence appears in the ADA notice argument).

[24] Order – ECF No. 63 at 15–16 (quoting *Bell v. Lee*, No. 13-cv-05820-SI, 2023 WL 5836812, at *2 (N.D. Cal. Sep. 8, 2023) (cleaned up)); Proposed SAC – ECF No. 65 at 63–64 (¶ 61E) (the August 2023 Public Records Act requests for "communications among the City, the Downtown Berkeley Association, the YMCA and Goree"), 107–08 (¶ 174).



United States District Court
Northern District of California

prompt a reasonable investigation into whether a municipal practice caused the injury. The proposed pleading supplies the date: "By August 2023 Plaintiff suspected that Goree had dealings with City staff and asked for their communications," Public Records Act requests, beginning that month, "for communications among the City, the Downtown Berkeley Association, the YMCA and Goree." By September–November 2023, he had records showing that the Department coordinated with the Association and trained, and arranged an orientation for, its enforcement personnel. A plaintiff who suspects a coordinated City–private enforcement relationship and is actively investigating it is on inquiry notice of claims that the relationship caused his injuries. The documents that later confirmed the suspicion (the 2015 Commission materials produced in March 2024) are additional evidence supporting the theory he was already pursuing. "[T]he later discovery of additional evidence supporting a legal theory does not delay accrual." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1050–51 (9th Cir. 2008). Measured from August 2023, the claims expired in August 2025, three months before the plaintiff filed this case.

The plaintiff's contention — that "[c]oordination and training are not the custom pleaded" (and that the custom is the charging of ambassador-assault victims and the refusal of their complaints, which he says he could not know until March 2024) — parses the claim too finely. The delayed-accrual approach asks when a plaintiff had reason to investigate a municipal cause, not when he could draft his best paragraph describing it. On his own account, he had both the suspicion and the investigation more than two years before suit. Paragraph 8F's assertion that he could not, through reasonable diligence, have discovered the institutional basis any earlier is a conclusion that his specific allegations contradict: the diligent investigation was under way from August 2023. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The FAC's chronology confirms this: the plaintiff alleges that he experienced the alleged joint conduct firsthand, including YMCA–police visits to his residence through July 2023, and he pursued the records campaign from 2023.[25] Finally, *St. Clair v. County of Okanogan*, 154 F.4th 1154 (9th Cir. 2025), relied on by the reply,

---

[25] Order – ECF No. 63 at 16 & n.41 (the alleged joint YMCA–police visits to the plaintiff's residence through July 2023, citing FAC ¶¶ 61–64, 177); FAC – ECF No. 45 at 93 (¶ 175) (the 2023 records campaign).

does not alter the analysis. There, when the plaintiffs knew or should have known of the municipal custom was an open question of fact. Here the proposed pleading fixes the date of the suspicion and the investigation it prompted.[26] The § 1985(3) claim, which rests on the same program, fails with it. The September order held, and the court adheres to the holding, that no in-period act is itself a constitutional violation supporting a timely claim. The one candidate, the 2024 refusal, is addressed in section 3.

**2.3 California Equitable Tolling, Now Fully Briefed, Does Not Apply**

The September order resolved equitable tolling under California's three-element doctrine — timely notice to the defendant through good-faith pursuit of an alternative remedy, lack of prejudice, and reasonable conduct — without the benefit of briefing on it: the defendants had argued the federal standard, the plaintiff answered in kind, and the plaintiff's *Cervantes* citation went undiscussed.[27] A self-represented litigant should not lose his claims with prejudice under a standard he first learns from the dismissal order. *Akhtar*, 698 F.3d at 1212. But that concern is now answered: the plaintiff has pleaded his best tolling case, and both sides have briefed the doctrine: *Daviton*, *Collier*, *McDonald*, and *Cervantes*.[28] The court therefore applies the three-part test to the plaintiff's allegations, read liberally, as *Cervantes* directs. Dismissal on the pleadings is proper where "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes*, 5 F.3d at 1275–76. That is the case here, for three reasons.

First, the proceedings the plaintiff invokes were not the pursuit of an alternative remedy for these claims. The ODPA and Internal Affairs processes could review officer conduct and recommend discipline. They could not adjudicate or redress the constitutional damages claims

---

[26] Reply – ECF No. 70 at 15–17.

[27] Mot. to Dismiss – ECF No. 47 at 19 (arguing the federal standard, citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990); *Holland v. Florida*, 560 U.S. 631 (2010); *Smith v. Davis*, 953 F.3d 582 (9th Cir. 2020); and *Roberts v. Marshall*, 627 F.3d 768 (9th Cir. 2010)); Opp'n – ECF No. 50 at 4 (citing *Cervantes*).

[28] Opp'n – ECF No. 68 at 24–25 & n.7 (briefing *Daviton*, *Collier*, and *McDonald*); Reply – ECF No. 70 at 13–14, 16–18; Proposed SAC – ECF No. 65 at 109–15 (¶¶ 176–78).

asserted here. *McDonald* is not to the contrary: there the internal grievance procedure was an established mechanism for investigating and resolving the discrimination dispute later sued on under FEHA. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102–05 (2008).

Second, the proceedings did not give notice of the claims now sued on. The first ODPA complaint named Officer Peters but answered "No" to whether the incident involved a Berkeley police officer, and the Office closed it as not alleging prima facie officer misconduct. The second complaint concerned the failure to investigate Goree, a different wrong from the fabrication and municipal-custom claims the plaintiff now advances. *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137–41 (9th Cir. 2001) (en banc) (the earlier proceeding must concern the same wrong and posture the defendant to defend the later claim).[29]

Third, the doctrine's premise — a plaintiff who, faced with several remedies, reasonably and in good faith pursued one in lieu of suing — is absent. The plaintiff retained counsel in August 2022, sued the YMCA and Goree in state court in October 2022, prosecuted that action throughout the oversight proceedings, and filed this federal case while his November 2024 oversight complaint still sat unanswered. The oversight process neither delayed nor substituted for his resort to the courts.[30] The Government Claims Act presentation adds nothing: it is a statutory precondition to the state-law claims, not the voluntary pursuit of an alternative remedy, and the plaintiff already received its benefit in the two-year period of § 945.6(a)(2) that the September order applied. Applying the mandatory three-part test, no tolling is available on these pleadings, and the futility holding stands, now with the standard briefed and the plaintiff's best allegations.

**2.4 The Fabrication Claim Remains Untimely on Any View of Accrual**

Claim five fails. Assuming favorable-termination accrual, the claim accrued on November 23, 2022, or on December 6, 2022, and expired two years later, in late 2024, without tolling. The tolling theories fail for the reasons just stated.[31] The plaintiff's fallback positions do not save the

---

[29] Proposed SAC – ECF No. 65 at 62–63 (¶ 61D), 66–67 (¶ 61I); Cammas Decl. – ECF No. 65-2 at 2–3.

[30] Proposed SAC – ECF No. 65 at 109 (¶ 175); FAC – ECF No. 45 at 6 (¶ 8B); Order – ECF No. 63 at 4, 12–13.

[31] Order – ECF No. 63 at 11; Proposed SAC – ECF No. 65 at 114 (¶ 178); Opp'n – ECF No. 68 at 28.

claim. Even applying tolling during the actual pendency of the oversight proceeding (from the March 31, 2023 complaint through the March 21, 2024 closure letter, about eleven and a half months), a claim accruing on November 23, 2022 expired in mid-November 2025, before this action was filed on November 28, 2025. Stretching tolling into August 2024 on the theory that the plaintiff's January 8, 2024 objection kept the proceeding alive fails: the Board voted on December 6, 2023, the Director's closure letter issued March 21, 2024, and the Office later wrote that it had never received the objection and was not reviewing it. Continued correspondence about a closed file is not the good-faith pursuit of an alternative remedy.[32]

**2.5 The *Monell* and Conspiracy Claims Also Remain Insufficiently Pleaded**

The September order dismissed claim ten on an independent ground: even if timely, the FAC did not identify a municipal policy, custom, or training deficiency (or a pattern of similar violations) that plausibly was the moving force behind the responding officers' own conduct, and the ratification theory failed because a policymaker's "mere failure to overrule a subordinate's actions, without more, is insufficient." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).[33] The proposed pleading does not cure that defect. Its principal additions are a 2015 Peace and Justice Commission resolution describing one earlier incident (involving Downtown Berkeley Association ambassadors and different officers) and records that the Department trained and corresponded with the enforcement personnel. A single prior incident seven years earlier (plus training cooperation) is not a practice of "sufficient duration, frequency and consistency" to constitute a custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The pleading supplies no "direct causal link" between any municipal choice and what Officers Futch, Peters, and Landrum allegedly did in 2022. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). If anything, the Commission materials allege that a City body confronted the 2015 incident and sought an explanation and corrective action, the opposite of municipal acquiescence. The § 1985(3) claim fares no better: the proposed pleading

[32] Proposed SAC – ECF No. 65 at 62–63 (¶ 61D), 109–12 (¶ 176) (the March 31, 2023 complaint; the November 28, 2023 findings; the December 6, 2023 Board vote; the March 21, 2024 closure letter; the January 8, 2024 objection, which the Office stated on August 5, 2024, it had not received).

[33] Order – ECF No. 63 at 15 (no constitutional entitlement to an internal-affairs outcome, citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005)), 16–17 (the merits holding).

United States District Court
Northern District of California

describes different actors, at different times, engaged in different activities, and pleads no facts plausibly showing an agreement among these defendants to deprive the plaintiff of equal protection, or the class-based animus the statute requires. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).[34] Reconsideration of claims five, ten, and fifteen is denied, and the request to modify the dismissal to one with leave to amend is denied as futile.

**3. The Motion for Leave to Amend**

**3.1 The Supplement's Allegations Show the Retaliation Claim Is Untimely**

The supplement does what the September order asked: it names the actors, identifies the protected activity, and pleads motive facts rather than sequence alone. The problem is what the added detail shows. The September order said that the June 25, 2024 refusal "is within the period" and "could in principle support its own claim." Those statements rested on the FAC's description of a discrete June 25, 2024 "refusal to accept the plaintiff's police report," a description the order found too conclusory to evaluate.[35] The supplement now supplies the particulars, and they establish that the decision the plaintiff challenges was made in February 2023. Sergeant Wilson told him then that the Department had investigated the incident, would not investigate further, and would not "bolster" his civil lawsuit, and her written disposition issued on February 7, 2023.[36] What happened in 2024 was correspondence about that decision. The plaintiff's June 25, 2024 email recounted that he had tried to file a report with Sergeant Wilson, quoted her alleged 2023 statement, and asked "what remedy exists for her refusal." Sergeant Jones's July 3, 2024 reply addressed "the attempt to file a police report with Sergeant Wilson" and declined to act because charging is the District Attorney's decision. The plaintiff's July 16, 2024 email asked the Department to "confirm you are refusing," a request for confirmation of a position already taken.[37]

---

[34] Opp'n – ECF No. 68 at 26–28 (citing, inter alia, Proposed SAC ¶ 136); Reply – ECF No. 70 at 17–18 (citing Proposed SAC ¶ 138A); Proposed SAC – ECF No. 65 at 64–65 (¶ 61F).

[35] Order – ECF No. 63 at 15, 18; FAC – ECF No. 45 at 5–6 (¶ 8H), 55–56 (¶¶ 117–20).

[36] Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 12–13 (¶¶ 6–8).

[37] *Id.* at 13–14 (¶¶ 9–12).

United States District Court
Northern District of California

A new limitations period runs from an "independently wrongful, discrete act," not from the continuing effects of an earlier decision or from its reaffirmation on request. *Pouncil v. Tilton*, 704 F.3d 568, 579–83 (9th Cir. 2012); *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001); *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746–48 (9th Cir. 2019). *Pouncil* does not help the plaintiff: there, a prisoner made a new request (to marry a different person, years later) and received a new denial under the governing regulation, meaning, a new decision about a new publication. Here, the same citizen renewed the same demand concerning the same completed investigation of the same 2022 incident, and the Department answered by standing on its 2023 position. The supplement's claim rests on the February 2023 refusal for its wrongfulness and its motive (the "bolster" statement is Wilson's, from 2023), so the 2024 correspondence is not an independently wrongful act and instead is an echo of the earlier act. Measured from February 2023, the two-year period expired in February 2025, before the First Amended Complaint first pleaded the retaliation claim against Chief Louis in April 2026, and long before the supplement named the other officers in September 2026. The claim is untimely for every proposed defendant.[38]

**3.2 The Claims Against the Newly Named Officers Are Independently Time-Barred**

Even if the July 2024 exchanges were independently actionable, the claims against Sergeant Wilson, Lieutenant Lindenau, and Sergeant Jones (first asserted on September 21, 2026) would be untimely, because more than two years separate them from the last act alleged (July 16, 2024). Relation back under Rule 15(c)(1)(C) requires a "mistake concerning the proper party's identity," and "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis" of such a mistake. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549, 552 (2010). The plaintiff spoke with Sergeant Wilson personally in February 2023, addressed his 2024 emails to Lieutenant Lindenau and Chief Louis, received Sergeant Jones's reply, and named Lindenau, Jones, and Louis (describing Wilson's role) in his November 11, 2024 certified personnel complaint, a year before he filed this action naming the City and its policymakers instead. That is a fully informed choice, not a mistake of identity.

[38] Opp'n – ECF No. 68 at 13–15; Reply – ECF No. 70 at 6–8.

And equitable tolling during the November 2024 oversight complaint fails for the reasons in section 2.3. The complaint sought discipline, not a remedy for a retaliation damages claim, and the plaintiff filed this lawsuit while it sat unanswered, which refutes any suggestion that he was pursuing it in lieu of litigation.[39]

**3.3 The Supplement Does Not Plausibly Plead Retaliation by Any Officer**

The claim also fails officer by officer. Section 1983 liability requires personal participation in the alleged violation. The only 2024 act by any proposed defendant is Sergeant Jones's July 3 email, which stated the unremarkable (and, on the pleadings, accurate) proposition that charging decisions belong to the District Attorney. Nothing pleads that Jones knew of the plaintiff's protected activity beyond the plaintiff's own email, shared any retaliatory purpose, or had authority to reopen a completed investigation. Lieutenant Lindenau and Chief Louis are pleaded as addressees who did not respond. An unanswered email is not acquiescence in known unconstitutional conduct. Sergeant Wilson's alleged "bolster" statement is the plaintiff's strongest motive fact, but it attaches to her February 2023 refusal (the time-barred act) and she is alleged to have taken no action in 2024 at all. And the adverse action pleaded (a department's refusal to reinvestigate an incident it investigated and the District Attorney reviewed) is an exercise of investigative discretion to which no one is constitutionally entitled. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005).[40]

**3.4 Qualified Immunity Independently Makes Amendment Futile**

Finally, the individual officers would be entitled to qualified immunity on the pleaded facts, which independently makes amendment futile as to the damages claims against them. The right must be defined with specificity, not at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The question is therefore whether existing precedent placed beyond debate that an officer violates the First Amendment by declining to reinvestigate an already-investigated incident, take a renewed report about it, or forward additional evidence to the prosecutor, because

---

[39] Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 16–17 (¶ 18); Opp'n – ECF No. 68 at 16–18; Reply – ECF No. 70 at 13–14.

[40] Suppl., Ex. 1 to Am. Mot. – ECF No. 64 at 13–14 (¶¶ 8–12); Opp'n – ECF No. 68 at 18–20 & nn.4–5.

the requester has sued and complained about the department. No Supreme Court or Ninth Circuit decision so holds. The plaintiff's principal authorities are two out-of-circuit district-court decisions, which cannot clearly establish the law here. *Capp*'s general statement that retaliatory government action was forbidden frames the right at the level of generality *al-Kidd* forbids. The closest Ninth Circuit authority points the other way. In *Moore v. Garnand*, 83 F.4th 743, 752–53 (9th Cir. 2023), officers who allegedly opened a criminal investigation in retaliation for a lawsuit and records requests received qualified immunity because no precedent clearly established "that a retaliatory investigation per se violates the First Amendment." If affirmatively investigating a speaker in retaliation was not clearly unlawful, declining to reinvestigate for him was not either. *Sanderlin v. Dwyer*, 116 F.4th 905 (9th Cir. 2024), relied on in the reply, involved an officer's use of force against a protester (a paradigmatic coercive exercise of authority) and says nothing about investigative declinations. Because the immunity here turns on a question of law apparent on the face of the proposed pleading, it may be resolved now. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). The supplement seeks damages for the alleged retaliation. Qualified immunity bars those claims, and the pleading states no plausible basis for other relief against the officers. Leave to amend is denied.[41]

### 4. Entry of Judgment

The plaintiff is right that no motion for entry of judgment is pending, but none is required.[42] The September order dismissed every claim with prejudice except the retaliation theory, and conditioned that theory's survival on a successful motion for leave to amend. That motion has now been denied as futile, and reconsideration of the other dismissals has been denied. Nothing remains. When all claims have been resolved, the court enters judgment. Fed. R. Civ. P. 58. The court will enter judgment for the defendants.

---

[41] Opp'n – ECF No. 68 at 20–22; Reply – ECF No. 70 at 10–12; Am. Mot. – ECF No. 64 at 4–5 (citing *Whitehouse v. Piazza*, 397 F. Supp. 2d 935, 940–41 (N.D. Ill. 2005) and *Farrar v. City of Chicago*, 291 F. Supp. 2d 747, 752 (N.D. Ill. 2003).

[42] Reply – ECF No. 70 at 18.

## CONCLUSION

The court grants the plaintiff's administrative motion to file his late reply and has considered the reply. The motion for leave to amend (ECF No. 64) is denied because amendment would be futile. The motion for leave to file a motion for reconsideration (ECF No. 65) is granted in part: the court has reconsidered the September 7, 2026 order in light of the motion and corrects that order's record citations as stated in section 2.1 above. The motion is otherwise denied, including its alternative request to modify the dismissal of claims five, ten, and fifteen, and the September 7, 2026 order otherwise stands. All claims are dismissed with prejudice. The court will enter judgment in favor of the defendants by separate document, Fed. R. Civ. P. 58, and the Clerk is directed to close the case.

This resolves ECF Nos. 64 and 65.

**IT IS SO ORDERED.**

Dated: October 19, 2026

LAUREL BEELER
United States Magistrate Judge